UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    v.<br><br>JOSEPH SANDERS,<br><br>      Defendant. | Case No. 04-cr-40030-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of defendant Joseph Sanders ("Sanders") for judgment of acquittal or, in the alternative, for a new trial (Doc. 57). The government has responded to the motion (Doc. 58).

**I.   Background**

In May 2004, Sanders was indicted on one count of possessing a weapon in prison while a federal prison inmate at the United States Penitentiary at Marion, Illinois ("USP-Marion"). At the bench trial of this matter on July 18, 2005, the government presented evidence from USP-Marion correctional officers Wayne Boaz ("Boaz") and Matthew Grant ("Grant") regarding a search of Sanders' cell and person and the discovery of a weapon, wrapped in cellophane and toilet paper and smelling of feces, in Sanders' right shoe. Government witness Larry Kammerer ("Kammerer"), formerly the USP-Marion law enforcement coordinator, testified that he destroyed the feces-laden cellophane and toilet paper without performing any tests to identify whether the fecal matter came from Sanders. He testified that, although USP-Marion had methods and materials to preserve such evidence, he destroyed the cellophane and toilet paper because they posed a biohazard.

At trial, Sanders testified in his own defense. He testified that his cell at the time was covered in feces, possibly left by the former occupant of the cell, and that the weapon was likely

hidden in the feces.  He testified that he did not knowingly possess the weapon allegedly found in his shoe and that the correctional officers who performed the search of his cell must have found the weapon there and planted it in his shoe when they searched him.

The Court ruled from the bench and found Sanders guilty of the charge and subsequently issued a written opinion setting forth its findings and conclusions.

Sanders filed this motion on July 27, 2005, within the seven days allowed by Federal Rules of Criminal Procedure 29(c)(1) and 33(b)(2).  Sanders asks the Court to enter a judgment of acquittal or, in the alternative, to order a new trial on two grounds:  (1) that BOP officials improperly destroyed exculpatory evidence, namely, the feces-covered cellophane and toilet paper in which the weapon was found, and (2) that the government failed to disclose prior to trial a statement from Boaz that corroborates one of Grant's two statements regarding an alleged inculpatory statement made by Sanders.

The government argues that Sanders has waived his argument based on the destruction of evidence because he failed to raise it before trial and that, in any case, Sanders' arguments fail on the merits.

**II.   Applicable Law**

A court should grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction" for the offenses charged.  Fed. R. Crim. P. 29(a).  The Court may grant the motion only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged.  In other words, a court should grant the motion only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt.  *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002) (citing *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979)).

A court may grant a defendant a new trial if the interests of justice so require. Fed. R. Crim. P. 33.

**III. Analysis**

A. <u>Destruction of Evidence</u>

The Court declines to grant Sanders' motion for judgment of acquittal or, in the alternative, for a new trial based on Kammerer's destruction of the feces-covered cellophane and toilet paper in which the weapon was found.

It is clear that if evidence is favorable to an accused and is material to either guilt or punishment, due process requires that it be produced to the defendant irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, this constitutional duty to preserve and produce evidence is limited to "evidence that might be expected to play a significant role in the suspect's defense," that is, evidence that "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). If evidence does not fall into this category, its loss or destruction does not implicate due process absent bad faith such as, for example, "official animus" toward the defendant or "conscious effort to suppress exculpatory evidence." *Id.* at 488; *see United States v. Folami*, 236 F.3d 860, 864-65 (7th Cir. 2001).

Material that is only *potentially* exculpatory does not pass *Trombetta*'s test. Where it is not apparent that the evidence is exculpatory and where "no more can be said that than it could have been subjected to tests, the results of which might have exonerated the defendant," due

3

process does not require the government to maintain or produce the evidence unless the defendant shows that the government acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1989); *see Henry v. Page*, 223 F.3d 477, 481-82 (7th Cir. 2000). There is no constitutional requirement that law enforcement officers retain and preserve "all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.*

The Seventh Circuit Court of Appeals has drawn from these principles a three-part test that a defendant must establish in order to show that the destruction of evidence violates his due process rights:  (1) that there was bad faith on the part of the government, (2) that the exculpatory value of the evidence was apparent before the evidence was destroyed and (3) that the defendant would be unable to obtain comparable evidence by other reasonably available means. *United States v. Watts*, 29 F.3d 287, 289-90 (7th Cir. 1994); *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992).

      1.      <u>Bad Faith</u>

Sanders has failed to establish that Kammerer destroyed the feces-covered cellophane and toilet paper in bad faith. Sanders argues that Kammerer's bad faith is demonstrated because he had the ability to preserve the fecal material as evidence in this case and that he cited as one reason for not doing so his desire not to waste an evidence bag. He also points to the fact that Kammerer did not check with the FBI before destroying the evidence. These facts are not sufficient to establish that Kammerer acted in bad faith.

On the contrary, Kammerer's good faith is evident from the trial record. He testified at trial that he destroyed the evidence because it posed a biohazard and in his opinion had no

evidentiary value.  The Court finds this testimony to be credible based on Kammerer's demeanor while testifying and the consistency of his testimony with other evidence.  The Court further notes that Sanders has presented no evidence that, at the time Kammerer obtained the cellophane and toilet paper, he had or reasonably should have had any suspicion that the source of the feces could in any way be considered exculpatory evidence.  At that time, it was clear that Kammerer believed the relevant portion of evidence was the weapon concealed within the cellophane and toilet paper and that he had no inkling of Sanders' defense that the knife had been buried in another's feces and was planted on him during the search.

Sanders has simply pointed to nothing that would suggest Kammerer acted in bad faith when he destroyed what he apparently believed at the time to be irrelevant and hazardous material.

2. <u>Apparently Exculpatory Nature</u>

Sanders has not established that the feces-laden cellophane and toilet paper possessed an exculpatory value that was apparent before the evidence was destroyed.  As noted above, at the time the evidence was destroyed, it was clear to Kammerer that the relevant question for the prosecution of this case was whether Sanders possessed the contents of the cellophane and toilet paper, not the source of the fecal matter coating the cellophane and toilet paper itself.  Regardless of the source or travels of the wrapped knife, the crucial and apparent question was whether Sanders possessed it, and the source of the feces would clearly not be expected to play a significant role in Sanders' defense.

Furthermore, even in light of Sanders' theory of defense, the evidence does not appear to be exculpatory.  It was not apparent at the time the evidence was destroyed that the source of the fecal matter was someone other than Sanders and that such evidence could have helped him in

5

his defense. The most that could have been said at the time was that the evidence was *potentially* helpful and that it could have been subject to testing that *might have* been to Sanders' benefit. It could not have been said that a favorable test would have exonerated Sanders, for it is neither impossible or implausible that Sanders could have knowingly possessed in his shoe a wrapped weapon that had at some previous time been in contact with another's feces. Sanders has failed to carry his burden of showing that the exculpatory nature of the destroyed evidence was apparent at the time of its destruction. In light of the Court's resolution of the first two elements of the three-part test against Sanders, there is no need to address the third element, the availability of comparable evidence.

      B.      <u>Failure to Disclose Exculpatory Evidence</u>

The Court declines to grant Sanders' motion for judgment of acquittal or, in the alternative, for a new trial based on the government's failure to disclose prior to trial the statement of Boaz regarding an alleged inculpatory statement made by Sanders to Grant. As a preliminary matter, it is important to note that the Court did not consider the alleged statement as substantive evidence against Sanders. Accordingly, Sanders' argument focuses on the impeachment value of the differences in Boaz's and Grant's recollection of the same event. He argues that the differences are so critical that they would cast doubt on the credibility in general of Grant's, Boaz's and FBI Special Agent Bastion Freund's ("Freund") testimony as a whole.

A review of the relevant statements may be helpful. Boaz testified that after the weapon was found in Sanders' shoe and after he had prepared an incident report, he overheard Grant, standing on the range walkway in front of Sanders' cell, ask Sanders through the open outer door to his cell where he had gotten the metal for the weapon. Boaz overheard Sanders respond, "It doesn't matter where I got it. I'll have another one shortly," or words to that effect. Boaz did

not amend his incident report to reflect this statement from Sanders.

Grant testified at trial that a couple of hours after the weapon was found, he asked Sanders where he got the weapon, and Sanders reply included the statement, "I'll have another one in no time flat."

Freund testified that Boaz did not report Sanders' statement in his initial interview with Freund and that the information came to light in July 2004 in the process of preparing for trial, which had been scheduled to take place in August 2004. Freund never memorialized this information from Boaz in a written statement. Freund also testified that in his first interview of Grant on March 30, 2004, Grant had reported that at some point after the weapon had been recovered from Sanders' shoe, Sanders stated, "I'll have another one in no time flat," and that in his second interview of Grant on April 20, 2004, Grant again reported Sanders' statement and that there was another officer present whose identity he could not remember.

The only statement Sanders believes was improperly withheld was Boaz's statement, discovered a year before trial, that he had overheard Sanders' statement to Grant.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150, 155 (1972), the prosecution has the duty to ensure that criminal trials are fair by disclosing evidence that is favorable to the defendants or that impeaches a government witness. There is no doubt that a defendant is entitled to disclosure of all evidence that "would tend to exculpate" him, *Brady*, 373 U.S. at 88, and all evidence that casts doubt on the credibility of prosecution witnesses and is material to the outcome of the trial. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio*, 405 U.S. at 155; *see Rodriguez v. Peters*, 63 F.3d 546, 555 n.10 (7th Cir. 1995). Evidence is material to the outcome of the trial if "its suppression undermines confidence in the outcome of the trial," *Bagley*, 473 U.S. at 678, because there is a "reasonable probability"

that disclosure would bring about a different result at trial, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). *United States v. Gonzalez*, 93 F.3d 311, 316 (7th Cir. 1996). However, "[t]he materiality standard is not met by '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial. . . .'" *Hamilton*, 107 F.3d at 509 (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)). *Brady* and *Giglio* do not require disclosure of "every possible shred of evidence that could conceivably benefit the defendant." *Hamilton*, 107 F.3d at 509. The prosecution is under the obligation to comply with these obligations or risk the integrity of these proceedings. Again, the Seventh Circuit Court of Appeals has boiled these principles down to a three-part test that the defendant must prove: (1) that the evidence is exculpatory or impeaching, (2) that the government suppressed the evidence and (3) that the defendant suffered prejudice as a result of the suppression. *United States v. Fallon*, 348 F.3d 248, 251-52 (7th Cir. 2003).

The Court need not examine either of the first two elements because it is clear that Sanders suffered no prejudice from the failure to disclose Boaz's statement prior to trial. First, the inconsistencies in Boaz's and Grant's memory of the circumstances surrounding Sanders' statement – if there even are such inconsistencies – relate to minor details while their memories of the statement itself, as well as of the other relevant events of that day, were consistent. It is highly unlikely that a reasonable trier of fact would have been caused by discrepancies in small details to disbelieve the government witnesses when the major thrust of their testimonies was the same and was in large part corroborated by video and other testimonial evidence. Indeed, while the Court did not consider the testimony regarding Sanders' statement in deciding this case, if it had, it would have found the discrepancies to fall within the category of discrepancies that involve minor details and that often occur naturally due to the passage of time between events

and the time a statement or testimony is given.

Second, had the Court considered any impeaching discrepancies in the government witnesses' testimonies, it would also have been able to consider the substance of Sanders' statement, which would have provided strong evidence that he committed the crime charged. Indeed, in order to avoid any constitutional questions about the failure to disclose evidence, the Court chose the remedy of excluding the evidence, which was clearly more inculpatory than exculpatory.

Finally, even if the Court had considered testimony regarding Sanders' statement, Boaz testified at trial before Grant, so his testimony was available to impeach Grant and Freund. There is no *Brady* violation if a defendant learns of information in time to use it at trial. *See United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001). Speculation that Sanders' counsel could have made better use of the information by seeking to interview Boaz, Grant or Freund prior to trial or to obtain their personnel records is insufficient to demonstrate prejudice.

In sum, Sanders has not established that, even if Sanders had discovered Boaz's statement prior to trial, there is a reasonable probability that the outcome of the trial would have been any different. A judgment of acquittal or a new trial is not warranted.

## IV. Conclusion

The Court **DENIES** Sanders' motion for judgment of acquittal or, in the alternative, for a new trial (Doc. 57).

**IT IS SO ORDERED.**
**DATED:  October 27, 2005**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **U.S. DISTRICT JUDGE**